**Lonnie James JACOBS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–266 CR.**

Court of Appeals of Texas,
Beaumont.

March 16, 1994.

---

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appeal from a conviction of the felony of aggravated sexual assault. The appellant was indicted by Jefferson County Grand Jury for aggravated sexual assault. This alleged assault was said to have occurred on November 18, 1991. The assault was alleged to be on and against a female child younger than fourteen years of age, being about twelve years of age at the time of the indicted offense. In mid-July 1993, the appellant waived a jury trial and pleaded no contest before the trial bench.

A pre-sentence report was presented. The court convened for sentencing in early September 1993. At this sentencing hearing, the prosecution recommended that the court find the appellant guilty and assess his punishment at confinement for ten years in prison. The defense recommended that the trial court defer the adjudication of guilt and place the appellant on probation. The mother of the twelve-year-old female victim took the position that she wanted the appellant to receive a probated sentence. Also, the appellant argues that the child victim desired for the appellant to receive probation.

The record, without contradiction, reveals that the appellant, after many careful admonitions and warnings by the bench, pleaded nolo contendere or no contest and this plea was properly accepted. The appellant, in fact, pleaded no contest to the allegations in the indictment. The indictment alleged that on or about the 18th day of November 1991, and anterior to the presentment of this indictment that in Jefferson County the accused, Lonnie James Jacobs, did then and there sexually assault the victim, M.W., who was styled the complainant and who was a person younger than seventeen years of age and not the spouse of Jacobs and that the sexual assault was done intentionally and knowingly causing the penetration of the female sex organ of the complainant by the insertion of the sex organ of Jacobs and that the complainant was then and there at that time younger than fourteen years of age.

The appellant presents a single point of error reading: "The evidence was insufficient to support the conviction." Appellant argues that the judicial confession in the case and in the record had been meaningfully and destructively mutilated. Significantly and apparently without any logical explanation, three sentences or parts of sentences were stricken through. As best we can discern, the stricken-through sentences had read: "Under article 1.14 CCP I give up all rights given to me by law, whether of form, substance or procedure." That full sentence was deleted. The next deletion was a part of a sentence reading: "and I committed each and every element alleged." The last or third deletion was only a part of a sentence. That part reads: "I am guilty of the offense and. all lesser included offenses and". The word "and" ended the stricken part.

However, the judicial confession did state that the appellant understood all of the admonitions from the court and was aware of the consequences of his plea. He further stated that he was mentally competent and that his plea was freely and voluntarily made. The appellant stated that he was totally satisfied with the representation of his attorney and that his attorney was fully effective and had given competent representation. Appellant waived his right of jury, he waived his right to the appearance, confrontation, and cross-examination of witnesses under TEX. CODE CRIM.PROC.ANN. art. 1.15 (Vernon Supp. 1994), and he consented to oral and written stipulations of evidence in the case. Significantly, Jacobs swore to this, "I have read and my attorney has explained to me, the indictment or information filed against me."

Inasmuch as the appellant had pleaded nolo contendere or no contest to the entire indictment which he understood and which had been explained to him by his attorney; he, therefore, did not contest any of the allegations in the indictment. His plea was equivalent to a plea of guilty to the entirety of the indictment. The defense offered no evidence to controvert or to impeach the evidence or the allegations of a penetration.

Significant and noteworthy is the briefed position that the appellant bases his one point of error solely on the claim that the evidence before the trial judge was insufficient to prove any penetration of the twelve-year-old child's female sexual organs. There is no contention or argument made that the evidence was insufficient as to any of the other elements of the offense of aggravated sexual assault.

The State put on evidence before the trial bench. The important evidence was contained in and introduced by State's Exhibits 1, 2, 3, 4, 5, and 6.

Upon a reading and analysis of the State's Exhibits 1 through 6 inclusive, we conclude that these exhibits contain evidence of probative force which is amply sufficient to support a finding by any rational trier of facts—in the case before us being the trial judge—that the appellant did in fact penetrate the female sexual organ of the victim with his male sexual organ.

The evidence reveals that the victim's outcry was totally spontaneous and was made by the twelve-year-old immediately after the assault. The child related to her mother what had happened to her (the child). Her mother stated that she (the mother) knew that the victim was telling the truth and that Lonnie had raped her. The record clearly establishes that the natural mother took the child immediately to the police and then she followed police instructions and took the victim to the hospital. At the hospital, the child's underclothing was removed. The natural mother, Brenda, saw that the underwear or underclothing was very wet (as she described it) with a clear liquid. Furthermore, the twelve-year-old child described in detail the events that took place resulting in and causing her outcry and her complaint to her natural mother. The appellant was a common-law husband to the mother and was in the nature of a stepfather to the victim.

It is significant and it is important that the trial judge, after accepting the plea of no contest and entering the same, specifically asked the appellant if the appellant understood "everything that you have signed here this morning to your full and complete satisfaction." The appellant answered "Yes, sir." Significant as well is the fact that the State's Exhibits were entered into evidence before the bench without any objection.

Then the trial court explained that it was not bound or limited in any way by anything that either the district attorney recommended or that the appellant and his attorney recommended. The defendant clearly understood this matter, concerning recommendations. The court then carefully explained that the record revealed that the district attorney had recommended a ten year prison sentence to be imposed in the appellant's case. The appellant understood that. Then, the court in a very cogent way explained to the defendant this: "My job is to find out everything I can about what you did and your background, good and bad, and make the best decision I can. And whatever that is and whoever likes it or doesn't, that's going to be what happens. You sure you want it done that way." "Yes, sir." was the response from the appellant.

Brenda's evidence stated that Lonnie had raped the twelve-year-old girl. Brenda had taken the complainant to St. Mary's Hospital. The complainant then told the officers what happened; the complainant then went into "withdrawal". She was very scared and she was still crying. The statement also showed that Lonnie unbuttoned the victim's top garment and took her jumper off. Lonnie then put the victim on her stomach and pushed her down after she tried to get up. According to the statement in evidence, Lonnie then put his penis between her legs and it caused her pain. Previously, the victim daughter had not been sexually active in any way.

### The Evidence of Spermatozoa

By means of a lab report in evidence, spermatozoa were identified on a vaginal

smear. Other reports showed a sexual assault having been committed. Additionally, the record reflects that the victim, when forced down on the bed, had heard the suspect, Lonnie, unzipping his pants and Lonnie pulled down the victim's shorts and underwear. The victim then felt the suspect "lie on top of her". She began crying. The victim felt something between her legs and she felt the suspect moving up and down on top of her. Admittedly, the victim was unsure if her vagina or her anus had been penetrated. A penetration had taken place. However, the spermatozoa test was from the vagina. The victim went immediately to her mother's job site which was only about a block away. She immediately reported the matter to her natural mother.

The State argues in its brief that there was powerful and cogent corroborative evidence of penetration. The result of the tests shows that spermatozoa was found and identified as being in the victim's vaginal smear. This vaginal smear was taken very shortly after the alleged offense occurred under circumstances and surroundings which, in turn, clearly established that such spermatozoa necessarily had to be that belonging to the appellant. In the record, there exists no contradictory evidence concerning the location of the spermatozoa. There is no indication that it came from any source other than the appellant.

Based upon the record before us and the evidence above narrated, we conclude and hold that a rational factfinder could have found penetration of the vagina beyond a reasonable doubt. This conclusion is reinforced by the video tape, being an interview with the young victim. In the tape the victim narrates in ample detail the conduct of the appellant in the course of committing the indicted offense. The necessary element of penetration has been established at several places in the record before us. *See and compare Villalon v. State*, 791 S.W.2d 130 (Tex.Crim.App.1990). In cases of this tragic type, it is not to be expected that the twelve-year-old female will use exact, medically correct, technical language. Such a child victim being unsophisticated—as this record clearly establishes she was—then the child can be expected to use child-like language to describe the acts and to describe the penetration. *See and compare Garcia v. State*, 563 S.W.2d 925 (Tex.Crim.App.1978).

Upon a reconsideration of the totality of the evidence and the entirety of the record before us, we sanguinely overrule the appellant's point of error number one. The judgment and sentence below are affirmed.

AFFIRMED.